## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **NATIONAL ASSOCIATION OF CHAIN DRUG STORES**<br>413 North Lee Street<br>Alexandria, VA 22314, | ) ) ) ) ) | |
| and<br>**NATIONAL COMMUNITY PHARMACISTS ASSOCIATION**<br>100 Daingerfield Rd.<br>Alexandria, VA 22314, | ) ) ) ) ) ) | Civil Action No._____ |
| | ) ) ) | |
| Plaintiffs,<br><br>v. | ) ) ) ) | |
| **UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES**<br>200 Independence Ave., SW<br>Washington, DC 20201, | ) ) ) ) ) | |
| and<br>**MICHAEL O. LEAVITT, SECRETARY OF HEALTH AND HUMAN SERVICES**, solely in his official capacity<br>200 Independence Ave., SW<br>Washington, DC 20201, | ) ) ) ) ) ) ) | |
| and<br>**CENTERS FOR MEDICARE AND MEDICAID SERVICES**<br>200 Independence Ave., SW<br>Washington, DC 20201, | ) ) ) ) ) ) | |
| and<br>**KERRY WEEMS, ACTING ADMINISTRATOR OF THE CENTERS FOR MEDICARE AND MEDICAID SERVICES**, solely in his official capacity<br>200 Independence Ave., SW<br>Washington, DC 20201, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

Plaintiffs, the National Association of Chain Drug Stores ("NACDS") and the National Community Pharmacists Association ("NCPA") (collectively, the "Plaintiffs"), complain against the United States Department of Health and Human Services ("HHS"); Michael O. Leavitt ("Leavitt"), solely in his official capacity as Secretary of HHS; the Centers for Medicare and Medicaid Services ("CMS"); and Kerry Weems ("Weems"), solely in his official capacity as Acting Administrator of CMS (collectively, the "Defendants") for injunctive and declaratory relief and state as follows.

## INTRODUCTION

1.      This Complaint challenges a final rule promulgated by the Defendants regarding Medicaid reimbursement of retail pharmacies. *See* 72 Fed. Reg. 39142 (July 17, 2007) (the "AMP Rule"). The AMP Rule unlawfully changes the methodology by which pharmacies are reimbursed for dispensing prescription drugs to Medicaid patients. The AMP Rule is contrary to the plain language of the Social Security Act, contrary to Congress' clear intent when it enacted that statute, contrary to the Defendants' prior application of that statute, contrary to dozens of other federal and State statutes and regulations, contrary to long-standing industry practices, and contrary to common sense.

2.      The Defendants failed to implement the plain meaning of the Social Security Act because they were motivated to cut billions of dollars from payments to retail pharmacies that serve disadvantaged Americans through the Medicaid program. All of the Defendants' statutory violations result from the Defendants' efforts to cut Medicaid reimbursement to retail pharmacies below levels permitted by the statute.

3.      CMS estimates that the AMP Rule will reduce Medicaid reimbursement to retail pharmacies by more than $8 billion over five years. Studies by the HHS Office of Inspector

General and the Government Accountability Office found that reimbursement will be cut well below the prices that retail pharmacies pay for the drugs they dispense to Medicaid patients. *See* OIG, *Deficit Reduction Act of 2005: Impact on the Medicaid Federal Upper Limit Program,* OEI-03-06-00400 (June 2007); GAO, *Medicaid Outpatient Prescription Drugs: Estimated 2007 Federal Upper Limits for Reimbursement Compared with Retail Pharmacy Acquisition Costs,* GAO-07-239R (Dec. 22, 2006).

4.    Medicaid reimbursement rates for retail pharmacies were expected to decline as a result of the Deficit Reduction Act of 2005. However, in their zeal to cut retail pharmacy reimbursement rates even further, the Defendants have slashed reimbursement well below the rates allowed by Congress. Retail pharmacies will suffer even greater losses than they would if the Defendants had faithfully implemented the plain meaning of the statute. Many retail pharmacies, particularly small pharmacies and pharmacies that serve a large number of Medicaid patients, will be forced to reduce hours and services, forced out of the Medicaid program, or forced to close their doors altogether. Medicaid patients will lose access to retail pharmacies they rely on for critical pharmacy and pharmacist care.

5.    This Complaint seeks to enjoin the Defendants from implementing the unlawful AMP Rule, and seeks to enjoin the Defendants from posting on a public website the flawed data calculated pursuant to the AMP Rule. In addition, this Complaint seeks declaratory relief that the AMP Rule fails to comply with the Social Security Act.

## PARTIES

6.    Plaintiff NACDS is a tax-exempt, national trade association organized under section 501(c)(6) of the Internal Revenue Code and existing under the laws of the Commonwealth of Virginia. NACDS represents nearly 180 of the nation's leading retail pharmacy chains, including traditional pharmacy chains, supermarket chains that operate

pharmacies, and mass merchandisers that operate pharmacies. NACDS' members operate more than 38,000 retail pharmacies, employ approximately 114,000 pharmacists, and dispense more than 2.3 billion prescriptions each year. NACDS' organizational purpose is to represent its members' best interests, including those interests related to federal and State healthcare programs, and to help NACDS' members serve their patients.

7.     Plaintiff NCPA is a national association of independent community retail pharmacies and pharmacists organized and existing under the laws of the Commonwealth of Virginia. Founded in 1898 as the National Association of Retail Druggists, NCPA represents the owners, managers, and employees of 25,000 independent community retail pharmacies (not publicly held) across the United States, including independently owned chains and franchises. The more than 65,000 independent pharmacists nationwide dispense 1.5 billion prescriptions annually. Those prescriptions account, on average, for 92% of their annual sales. The nation's independent community pharmacists are small business entrepreneurs and multifaceted healthcare providers who represent a vital part of the United States' healthcare delivery system. NCPA's members are acknowledged by consumers as committed to high quality patient care and services and to restoring, maintaining, and promoting the health and well-being of the general public, including Medicaid patients. NCPA represents the professional and proprietary interests of independent community pharmacists, and promotes and defends those interests, including those interests pertaining to federal and State healthcare programs.

8.     Together, NACDS and NCPA represent virtually all retail pharmacies in the United States. An important purpose of these associations is to protect and advance their members' interests relating to Medicaid and other federal health programs.

9.    The retail pharmacies that are members of NACDS and NCPA participate as providers in the Medicaid program.  According to CMS, retail pharmacies filled over 294 million prescriptions for Medicaid patients in 2006.  Beginning in early 2008, retail pharmacies will be reimbursed for dispensing prescription drugs to Medicaid patients based on the AMP Rule.

10.    NACDS and NCPA have associational standing under Article III because (a) their members would otherwise have standing to sue in their own right, (b) the interests that NACDS and NCPA seek to protect are germane to their organizational purposes, and (c) neither the claims asserted nor the relief requested require the participation of individual members of NACDS or NCPA in the lawsuit.

11.    Defendant HHS is the cabinet department charged with administration of the Medicaid program.

12.    Defendant Leavitt is sued solely in his official capacity as the Secretary of HHS.

13.    Defendant CMS is the agency within HHS charged with administration of the Medicaid program.

14.    Defendant Weems is sued solely in his official capacity as the Acting Administrator of CMS.

## JURISDICTION AND VENUE

15.    Jurisdiction in this matter rests on 28 U.S.C. § 1331, 5 U.S.C. §§ 553, 702, and 703, and 28 U.S.C. § 2201.

16.    Venue is appropriate in this District pursuant to 28 U.S.C. § 1391.

## FACTS

### Pharmacy Reimbursement Under The Medicaid Program

17.    Medicaid is a joint federal and State program that was created by the Social Security Act to provide healthcare to disadvantaged Americans.  Federal and State government

agencies share responsibility for funding the Medicaid program. The Medicaid program is administered by each State in accordance with a Medicaid State Plan that is reviewed and approved by the Defendants. States must comply with federal requirements specified in the Social Security Act, as well as the regulations and program guidance issued by the Defendants pursuant to the Social Security Act.

18.     Retail pharmacies dispense prescription drugs to patients who are covered by the Medicaid program. In return, retail pharmacies receive reimbursement from the Medicaid program. The amount of reimbursement varies, depending in part upon whether a retail pharmacy dispenses a single source drug or a multiple source drug. Single source drugs are commonly referred to as brand name drugs, and multiple source drugs are commonly referred to as generic drugs.

19.     The Social Security Act requires the Defendants to calculate Federal Upper Limits on Medicaid reimbursement to retail pharmacies that dispense multiple source drugs to Medicaid patients. The Federal Upper Limits place an overall cap, or ceiling, on the amount that State Medicaid programs may pay retail pharmacies for multiple source drugs that are dispensed to Medicaid patients. *See* Social Security Act § 1927, codified at 42 U.S.C. § 1396r-8.

20.     Since the early 1990s, drug manufacturers have paid rebates to State Medicaid programs for drugs dispensed to Medicaid patients. Pursuant to the Social Security Act, these rebates are based on the "Average Manufacturer Price" (or "AMP") paid to the manufacturer by wholesalers for the drugs distributed to the retail pharmacy class of trade. Drug manufacturers calculate AMPs for each of their drug products, and report the AMPs to the Medicaid program on a regular basis. *See id.*, originally enacted by the Omnibus Budget Reconciliation Act of 1990, P.L. 101-508.

21.    The Deficit Reduction Act of 2005 ("DRA"), P.L. 109-171, amended the Social Security Act to require the Defendants to use AMP as the basis for setting Federal Upper Limits on reimbursement for multiple source drugs.    The Social Security Act statutorily defines "Average Manufacturer Price" and "multiple source drug." *See* Social Security Act § 1927 (42 U.S.C. § 1396r-8), as amended by DRA § 6001.

22.    In response to the DRA, the Defendants promulgated the AMP Rule on July 17, 2007.  The AMP Rule substantially revises the method of calculating AMPs and the method of establishing Federal Upper Limits on reimbursement for multiple source drugs.  Under the AMP Rule, Federal Upper Limits will ordinarily be set at 250 percent of the AMP for the least costly multiple source drug product. *See* AMP Rule § 447.514(b).

### The Final Rule Violates The Statutory Definition
### Of Average Manufacturer Price

23.    The statutory definition of AMP is clear and simple.  AMP is the average price paid to a drug manufacturer by wholesalers for drugs distributed to retail pharmacies. Specifically, the Social Security Act provides in relevant part that "the term 'Average Manufacturer Price' means, with respect to a covered outpatient drug of the manufacturer for a rebate period, the average price paid to the manufacturer for the drug in the United States by wholesalers for drugs distributed to the retail pharmacy class of trade." *See* Social Security Act § 1927(k)(1) (42 U.S.C. § 1396r-8(k)(1)), as amended by DRA § 6001(c).

24.    The statute establishes a four-part test for determining whether a price may be included in AMP.  First, only prices paid to drug manufacturers may be included in AMP. Second, those prices must have been paid by drug wholesalers.  Third, the drug must have been distributed to the retail pharmacy class of trade.  Fourth, the drug must be a "covered outpatient

drug" (*i.e.*, a drug for which Medicaid will pay). A price must satisfy all four parts of the test before it may be included in AMP.

25. The AMP Rule fails to abide by the statutory definition of AMP.

26. The Defendants exceeded the plain language of the statute by including in calculations of AMP many transactions that have nothing to do with the prices paid to manufacturers by wholesalers for drugs distributed to retail pharmacies. The following are a few of the many examples of sales that the AMP Rule improperly includes in calculations of AMP:

    a.    "Sales directly to patients";

    b.    "Sales to physicians";

    c.    Sales at nominal price to "any entity";

    d.    Sales to "surgical centers";

    e.    Sales to "dialysis centers";

    f.    Sales to "mental health centers";

    g.    Sales to "home health care providers";

    h.    Sales to "home infusion providers";

    i.    Sales to "clinics";

    j.    Sales to hospital outpatient pharmacies or a hospital "affiliated entity";

    k.    Sales to "pharmacy benefit managers (PBMs) for their mail order pharmacy purchases"; and

    l.    "Sales to mail order pharmacies".

*See* AMP Rule § 447.504(g).

27. These and many other sales prices (and associated discounts and rebates) listed in the AMP Rule should not be included in calculations of AMP. They each fail one or more parts

of the statute's test for inclusion in AMP. They are not prices paid to manufacturers, not paid by wholesalers, not related to drugs distributed to retail pharmacies, and/or do not qualify as covered outpatient drugs. In an effort to dramatically reduce Medicaid reimbursement to retail pharmacies, the Defendants have misapplied all four parts of the statutory tests for AMP.

28.     First, the AMP Rule includes in AMP calculations many fees and rebates that are not prices paid to drug manufacturers. These fees and rebates are paid by manufacturers to third parties, usually for services that do not affect the prices that manufacturers are paid for the drug. The Defendants' inclusion of financial transactions that are not prices paid to manufacturers by wholesalers is contrary to the plain meaning of the statute.

29.     Second, the AMP Rule mischaracterizes "wholesalers" as "any entity" that purchases drugs from manufacturers (except for relabelers and repackagers). The AMP Rule considers every patient, physician, hospital, pharmacy and virtually "any entity" that buys drugs from a manufacturer to be a "wholesaler". *See* AMP Rule § 447.504(f). The Defendants' definition of "wholesaler" is contrary to the plain meaning of the Social Security Act, contrary to other federal statutes, contrary to federal regulations, contrary to the Defendants' own policies, contrary to every relevant State law and regulation, contrary to longstanding industry practices, and contrary to common sense.

30.     Third, although the AMP Rule provides that the "retail pharmacy class of trade" is limited to entities that provide drugs to the "general public", the AMP Rule includes many entities that do not, in fact, serve the general public. For example, the AMP Rule includes, in the "retail pharmacy class of trade," mail order pharmacies that are closed to the general public and serve only beneficiaries of particular health plans. The Defendants' inclusion in the "retail pharmacy class of trade" of entities that are not retail pharmacies is contrary to the plain meaning

of the statute, contrary to the Defendants' own regulations and policies, contrary to longstanding industry practices, and is internally inconsistent with other provisions of the AMP Rule.

31.    Fourth, the AMP Rule includes in AMP calculations many sales of drugs that are not covered outpatient drugs. The statute's definition of "covered outpatient drugs" specifically excludes drugs that are provided as part of or incident to physician services, outpatient hospital services, or renal dialysis. *See* Social Security Act § 1927(k)(3), codified at 42 U.S.C. § 1936r-8(k)(3). Nevertheless, the AMP Rule specifically requires manufacturers to include sales of those drugs in AMP calculations. *See* AMP Rule § 447.504(g)(3), (8), (13). The Defendants' inclusion of non-covered drugs in AMP calculations is in direct violation of the statute.

32.    Preferential price discounts and rebates available to hospitals, clinics, PBM-owned mail order pharmacies and many other healthcare entities are not available to retail pharmacies. Moreover, federal and State laws prevent the arbitrage of prescription drugs, thereby preventing retail pharmacies from obtaining the benefit of this preferential pricing. As a result, these entities usually pay less for drugs than retail pharmacies. Including these sales prices (and associated discounts and rebates) in AMP calculations artificially decreases AMP, which improperly decreases Medicaid reimbursement to retail pharmacies.

33.    In addition, the AMP Rule completely reverses the statutory test for AMP by requiring a manufacturer to include prices in AMP unless the manufacturer can "adequately document" that the price should be excluded. However, the Social Security Act provides that drug prices must be *excluded* from AMP unless the evidence shows that the prices were paid by wholesalers and the drugs were distributed to retail pharmacies. In contrast, the AMP Rule provides that virtually all prices paid by almost any entity must be *included* in AMP unless a manufacturer can prove with "adequate documentation" that the drugs were *not* distributed to

specific "excluded entities." *See* AMP Rule § 447.504(g)(1). The Defendants acknowledge that manufacturers often lack "adequate documentation"; yet, the AMP Rule does not require manufacturers to make any effort to obtain adequate documentation. Manufacturers have a financial incentive to avoid obtaining adequate documentation because lower AMP calculations lead to lower rebate payments by manufacturers to States. The AMP Rule violates the Social Security Act by completely reversing the statutory test for determining what prices may be included in calculations of AMP.

34.    The Defendants will post on a public website AMP data calculated pursuant to the AMP Rule. *See* AMP Rule, 72 Fed. Reg. at 39213, 39222-24. States and other payers are expected to use this AMP data as a basis for establishing other reimbursement rates for retail pharmacies. *See id.* at 39146. If the Defendants are allowed to post on a public website the misleading and flawed AMP data calculated pursuant to the unlawful AMP Rule, retail pharmacies will be harmed by the resulting inadequate payment rates and consumer confusion.

**The Final Rule Violates Statutory Provisions
Regarding The Availability Of Multiple Source Drugs**

35.    The Defendants fail to abide by statutory provisions regarding the availability of multiple source drugs, commonly referred to as generic drugs.

36.    The AMP Rule establishes Federal Upper Limits on reimbursement to pharmacies for dispensing certain drugs to Medicaid patients. *See* AMP Rule §§ 447.512, 447.514.

37.    Under the Social Security Act, the Defendants may establish a Federal Upper Limit on reimbursement for a drug only if the drug qualifies as a "multiple source drug". *See* Social Security Act § 1927(e)(4) (42 U.S.C. § 1396r-8(e)(4)), as amended by DRA § 6001(a).

38.    The Social Security Act includes a State-based definition of "multiple source drug." According to that statutory definition, a drug does not constitute a multiple source drug in

a particular State unless two or more equivalent drug products are "sold or marketed in the State." The statute explains that "a drug product is considered to be sold or marketed in a State if it appears in a published national listing of average wholesale prices selected by the Secretary, provided that the listed product is generally available to the public through retail pharmacies in that State." *See* Social Security Act § 1927(k)(7) (42 U.S.C. § 1396r-8(k)(7)), as amended by DRA § 6001(a).

39. The AMP Rule violates these statutory requirements in three principal ways. First, the AMP Rule ignores the statute's requirement that the drug must be "sold or marketed in the State" and replaced it with a requirement that the drug must be "sold or marketed in the United States...." *See* AMP Rule § 447.502. The AMP Rule ignores the statute's State-based approach and instead establishes nationwide Federal Upper Limits on reimbursement so long as the drugs are sold or marketed somewhere in the United States.

40. Second, despite the specific statutory mandate, the AMP Rule fails to ensure that Federal Upper Limits will be established for a drug only if the drug "appears in a published national listing of average wholesale prices selected by the Secretary." The Defendants decided not to identify and use such a listing as part of the process of establishing Federal Upper Limits for multiple source drugs.

41. Third, the AMP Rule fails to ensure that Federal Upper Limits are applied in each State only to multiple source drugs that are "generally available to the public through retail pharmacies in that State." The AMP Rule completely ignores this statutory requirement.

42. The Defendants fail to ensure that Federal Upper Limits are established only for multiple source drugs, as defined by the statute. Rather than abide by the statute, the Defendants

have opted for a nationalized approach that ignores variations in the availability and prices of drugs in different States.

43.     If allowed to stand, the Defendants' decision to abandon the statute's standards will harm pharmacies. Federal Upper Limits must not cap a retail pharmacy's reimbursement for a drug if the drug does not constitute a multiple source drug in that retail pharmacy's State. Because the AMP Rule provides that each Federal Upper Limit will ordinarily be based on the drug product with the "lowest" AMP, if that drug product is not sold or marketed in a State, then the retail pharmacies in that State are expected to be reimbursed less than their acquisition cost for the drug.

### The Final Rule Violates The Statute By
### Applying Federal Upper Limits To Non-Equivalent Drugs

44.     The Defendants illegally attempt to apply Federal Upper Limits to drug products that are not therapeutically equivalent to the multiple source drugs used to set the Federal Upper Limits.

45.     The Social Security Act states that a drug product qualifies as a "multiple source drug" only if there is "at least one other drug product" which is "therapeutically equivalent (under the Food and Drug Administration's ["FDA"] most recent publication of "Approved Drug Products with Therapeutic Equivalence Evaluations"). . . ." *See* Social Security Act § 1927(k)(7) (42 U.S.C. § 1396r-8(k)(7)), as amended by DRA § 6001(a).

46.     The Social Security Act allows the Defendants to establish Federal Upper Limits on Medicaid reimbursement only for "multiple source drugs." Specifically, the statute provides that "the Secretary shall establish a Federal upper reimbursement limit for each multiple source drug for which the FDA has rated three or more (or, effective January 1, 2007, two or more) products therapeutically and pharmaceutically equivalent, regardless of whether all such

additional formulations are rated as such and shall use only such formulations when determining any such upper limit." *See* Social Security Act § 1927(e)(4) (42 U.S.C. § 1396r-8(e)(4)), as amended by DRA § 6001(a).

47.    The statutory provisions discussed above clearly limit Federal Upper Limits only to *equivalent* multiple source drug products.  Despite this statutory restriction, the Defendants announced in the AMP Rule that they will apply the Federal Upper Limits to *non-equivalent* drug products.  *See* AMP Rule, 72 Fed. Reg. at 39215.  The Defendants decided to apply the Federal Upper Limits to non-equivalent drugs for purely financial reasons.  *Id.*

48.    It is contrary to the plain language of the statute, and arbitrary and capricious, to apply Federal Upper Limits to drug products that are not equivalent to the multiple source drug products that are used to set the Federal Upper Limits.

49.    Applying Federal Upper Limits to non-equivalent drug products will harm retail pharmacies by imposing additional reimbursement limits on retail pharmacies beyond the many reimbursement limits that apply under other provisions of federal and State laws.

## COUNT I

### Declaratory And Injunctive Relief

**The AMP Rule's Method of Calculating Average Manufacturer Price Violates the Administrative Procedure Act Because It Is Contrary to the Plain Language Of The Social Security Act and Is Arbitrary and Capricious (5 U.S.C. § 701-706)**

50.    Plaintiffs incorporate paragraphs 1 through 49, as if fully set forth herein.

51.    The AMP Rule fails to comply with the Social Security Act because the method of calculating AMP established by the AMP Rule includes transactions other than prices paid to manufacturers by wholesalers for covered outpatient drugs distributed to the retail pharmacy class of trade.

52.    The AMP Rule's method of calculating AMP is contrary to the plain language of the Social Security Act, is contrary to other federal and State laws and regulations, is contrary to the Defendants' prior interpretations and implementation of federal law, exceeds the Defendants' legislative authority, and is arbitrary and capricious in violation of the Administrative Procedure Act.

## COUNT II

### Declaratory And Injunctive Relief

**The AMP Rule's Method of Establishing Federal Upper Limits for Multiple Source Drugs Violates the Administrative Procedure Act Because It Is Contrary to the Plain Language of the Social Security Act and Is Arbitrary and Capricious (5 U.S.C. § 701-706)**

53.    Plaintiffs incorporate paragraphs 1 through 52, as if fully set forth herein.

54.    The AMP Rule fails to comply with the Social Security Act because the AMP Rule ignores the statute's State-based approach which limits multiple source drugs and calculations of Federal Upper Limits to drug products that are generally available to the public through retail pharmacies in each particular State.

55.    The AMP Rule's method of establishing Federal Upper Limits for multiple source drugs is contrary to the plain language of the Social Security Act, contrary to the Defendants' prior interpretations and implementation of the statute, exceeds the Defendants' legislative authority, and is arbitrary and capricious in violation of the Administrative Procedure Act.

## COUNT III

### Declaratory And Injunctive Relief

**The AMP Rule's Application of Federal Upper Limits to Non-Equivalent Drugs Violates the Administrative Procedure Act Because It Is Contrary to the Plain Language of the Social Security Act and Is Arbitrary and Capricious (5 U.S.C. § 701-706)**

56.    Plaintiffs incorporate paragraphs 1 through 55, as if fully set forth herein.

57.    The AMP Rule fails to comply with the Social Security Act because the AMP Rule applies Federal Upper Limits to non-equivalent drug products.

58.    The AMP Rule's application of Federal Upper Limits to non-equivalent drugs is contrary to the plain language of the Social Security Act, contrary to clearly expressed Congressional intent, and is arbitrary and capricious in violation of the Administrative Procedure Act.

**PRAYER FOR RELIEF**

59.    Substantial, imminent, and irreparable injury will result because the retail pharmacies represented by NACDS and NCPA cannot recover the lost revenue from inadequate Medicaid reimbursement for prescription drug costs. Moreover, many independent and small pharmacies which serve Medicaid patients will be forced out of business due to inadequate reimbursement rates. Medicaid patients and the general public will be harmed to the extent that their access to prescription drugs and pharmacy services will be limited or eliminated as a result of retail pharmacy closures.

60.    The balance of equities favors injunctive relief because:

    a.    It is always in the public interest that agencies faithfully fulfill statutory mandates;

    b.    Retail pharmacies, Medicaid patients and the general public will incur substantial, imminent and irreparable harm if the AMP Rule goes into effect and flawed AMP data are posted on a public website; and

    c.    A delay for CMS to promulgate a final rule that conforms with the Social Security Act and Congressional intent will not harm the Defendants.

WHEREFORE, Plaintiffs pray that this Court: (1) declare the AMP Rule illegal; (2) preliminarily and permanently enjoin the Defendants from implementing the AMP Rule; (3) declare illegal the posting on the Defendants' public website of AMP data calculated pursuant to the AMP Rule; (4) preliminarily and permanently enjoin the Defendants from posting on the

Defendants' public website AMP data calculated pursuant to the AMP Rule; and (5) provide

such other relief as the Court deems appropriate.

Respectfully submitted,

Don L. Bell, II
General Counsel
D.C. Bar No. 443149
Mary Ellen Kleiman
Associate General Counsel
DC Bar No. 458400
National Association of Chain Drug Stores
413 North Lee Street
Alexandria, VA 22313-1480
P: 703-549-3001
F: 703-684-6747
Email: DBell@nacds.org
Email: MKleiman@nacds.org

John M. Rector
General Counsel
National Community Pharmacists Association
100 Daingerfield Road
Alexandria, VA 22314-2885
P: 703-683-8200
F: 703-683-3619
Email: john.rector@ncpanet.org

Christopher W. Mahoney
D.C. Bar No. 394416
Duane Morris LLP
1667 K Street, N.W., Suite 700
Washington, DC 20006-1608
(202) 776-7867 (telephone)
(202) 776-7801 (fax)
Email: CMahoney@duanemorris.com

Nicholas J. Lynn
Frederick R. Ball
Duane Morris LLP
227 West Monroe Street
Suite 3400
Chicago, Illinois 60606
(312) 499-6700 (telephone)
(312) 499-6701 (fax)
Email: NJLynn@duanemorris.com
Email: FRBall@duanemorris.com
Attorneys for National Association Of Chain
Drug Stores And National Community
Pharmacists Association

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| National Association of Chain Drug Stores and National Community Pharmacists Association | Michael O. Leavitt as Secretary of U.S. Dept. of Health & Human Services; U.S. Dept. of Health & Human Services; Kerry Weems as Administrator of Centers for Medicare and Medicaid Services; and Centers for Medicare & Medicaid Services |

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF    Alexandria
(EXCEPT IN U.S. PLAINTIFF CASES)    88888

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT    District of Columbia
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Christopher W. Mahoney
Duane Morris LLP
1667 K Street, NW, Suite 700
Washington, DC 20006
P: 202-776-7800

Case: 1:07-cv-02017
Assigned To : Lamberth, Royce C.
Assign. Date : 11/7/2007
Description: TRO/PI

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

O  1 U.S. Government
   Plaintiff

◉  2 U.S. Government
   Defendant

O  3 Federal Question
   (U.S. Government Not a Party)

O  4 Diversity
   (Indicate Citizenship of
   Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | O 1 | O 1 | Incorporated or Principal Place of Business in This State | O 4 | O 4 |
| Citizen of Another State | O 2 | O 2 | Incorporated and Principal Place of Business in Another State | O 5 | O 5 |
| Citizen or Subject of a Foreign Country | O 3 | O 3 | Foreign Nation | O 6 | ⊗ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

| O A. *Antitrust* | O B. *Personal Injury/ Malpractice* | ☒ C. *Administrative Agency Review* | ◉ D. *Temporary Restraining Order/Preliminary Injunction* |
|---|---|---|---|
| ☐ 410 Antitrust | ☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Medical Malpractice<br>☐ 365 Product Liability<br>☐ 368 Asbestos Product Liability | ☐ 151 Medicare Act<br><br>Social Security:<br>☐ 861 HIA ((1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g)<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)<br>Other Statutes<br>☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☒ 890 Other Statutory Actions (If Administrative Agency is Involved) | Any nature of suit from any category may be selected for this category of case assignment.<br><br>*(If Antitrust, then A governs)* |

| O E. *General Civil (Other)* | OR | O F. *Pro Se General Civil* |
|---|---|---|

| Real Property | Bankruptcy | Forfeiture/Penalty | |
|---|---|---|---|
| ☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent, Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property<br><br>Personal Property<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br><br>Prisoner Petitions<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br><br>Property Rights<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark<br><br>Federal Tax Suits<br>☐ 870 Taxes (US plaintiff or defendant<br>☐ 871 IRS-Third Party 26 USC 7609 | ☐ 610 Agriculture<br>☐ 620 Other Food &Drug<br>☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 630 Liquor Laws<br>☐ 640 RR & Truck<br>☐ 650 Airline Regs<br>☐ 660 Occupational Safety/Health<br>☐ 690 Other<br><br>Other Statutes<br>☐ 400 State Reapportionment<br>☐ 430 Banks & Banking<br>☐ 450 Commerce/ICC Rates/etc.<br>☐ 460 Deportation | ☐ 470 Racketeer Influenced & Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Satellite TV<br>☐ 810 Selective Service<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 875 Customer Challenge 12 USC 3410<br>☐ 900 Appeal of fee determination under equal access to Justice<br>☐ 950 Constitutionality of State Statutes<br>☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act |

| ○ **G.** *Habeas Corpus/ 2255* | ○ **H.** *Employment Discrimination* | ○ **I.** *FOIA/PRIVACY ACT* | ○ **J.** *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex,<br>national origin,<br>discrimination, disability<br>age, religion, retaliation)<br><br>\*(If pro se, select this deck)\* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions<br>(if Privacy Act)<br><br>\*(If pro se, select this deck)\* | ☐ 152 Recovery of Defaulted<br>Student Loans<br>(excluding veterans) |

| ○ **K.** *Labor/ERISA (non-employment)* | ○ **L.** *Other Civil Rights (non-employment)* | ○ **M.** *Contract* | ○ **N.** *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting &<br>Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights<br>Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-<br>Employment<br>☐ 446 Americans w/Disabilities-<br>Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment &<br>Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of<br>Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting<br>(if Voting Rights Act) |

**V. ORIGIN**

⊙ 1 Original Proceeding  ○ 2 Removed from State Court  ○ 3 Remanded from Appellate Court  ○ 4 Reinstated or Reopened  ○ 5 Transferred from another district (specify)  ○ 6 Multi district Litigation  ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)**

42 USC 1376  + 5 USC 1062

**VII. REQUESTED IN COMPLAINT**    CHECK IF THIS IS A CLASS ☐ ACTION UNDER F.R.C.P. 23    DEMAND $ N/A    Check YES only if demanded in complaint

JURY DEMAND:    YES ☐    NO ☐

**VIII. RELATED CASE(S) IF ANY**    (See instruction)    YES ☐    NO ☒    If yes, please complete related case form.

DATE 11/7/07    SIGNATURE OF ATTORNEY OF RECORD _[signature]_

## INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
### Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.    CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.    CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.    RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

Plaintiffs seek a declaration that defendants' promulgation of a final rule that changes the methodology by which retail pharmacies are reimbursed for dispensing prescription drugs to Medicaid patients violates the Social Security Act, 42 U.S.C. Section 1396r-8 and is arbitrary and capricious under the Administrative Procedure Act, 5 U.S.C. Section 706(2), and plaintiffs request that defendants be enjoined from implementing this rule.