# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **NATIONAL ASSOCIATION OF CHAIN DRUG STORES** and **NATIONAL COMMUNITY PHARMACISTS ASSOCIATION**, | ) ) ) ) ) | Civil Action No. 1:07-cv-02017 |
| Plaintiffs, | ) ) | Judge Lamberth |
| v. | ) ) | |
| **UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES**, *et al.,* | ) ) ) ) | |
| Defendants. | | |

## MEMORANDUM OF *AMICUS CURIAE* HEALTHCARE DISTRIBUTION MANAGEMENT ASSOCIATION IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

### I. <u>INTRODUCTION</u>

*Amicus curiae* Healthcare Distribution Management Association ("HDMA") is the national, not-for-profit trade association that represents the nation's primary, full-service healthcare distributors. These healthcare distributors deliver lifesaving products and services, ensuring that 300 million U.S. consumers have continuous access to prescription drugs and other important products. Prescription drugs are rarely shipped from the manufacturer straight to the pharmacy or other healthcare provider. Rather, a "middleman" – the wholesale distributor or wholesaler – is usually involved. Most prescription drugs are sold by manufacturers to wholesalers that ensure that nine million products are safely and efficiently delivered to 144,000 pharmacies, hospitals, clinics, physician offices, nursing homes, government providers, and others each and every day.

Founded over 125 years ago, HDMA was formerly known as The National Wholesale Druggists' Association.

HDMA respectfully submits this *amicus curiae* brief in support of the motion of plaintiffs National Association of Chain Drug Stores ("NACDS") and National Community Pharmacists Association ("NCPA") for a preliminary injunction to prevent the Center for Medicare and Medicaid Services' ("CMS") final rule on average manufacturer price ("AMP") from going into effect. The only issue addressed by this brief is CMS's definition of "wholesaler" in 42 C.F.R. § 447.504(f). As the national trade association representing the drug wholesaler industry, HDMA believes that it is uniquely qualified to address this issue.

## II. ARGUMENT

For the reasons discussed below, CMS did not adopt an appropriate definition of the term "wholesaler." Moreover, CMS did not respond adequately to comments from HDMA and others regarding CMS's proposed definition of "wholesaler."

### A. CMS Did Not Adopt An Appropriate Definition Of "Wholesaler"

CMS did not adopt an appropriate definition of "wholesaler." The term has a longstanding, well understood meaning in the Federal Food, Drug, and Cosmetic Act ("FFDCA"), 21 U.S.C. § 301, *et seq.*, another statute implemented by the Secretary of Health and Human Services ("HHS Secretary"). The term also has a well understood, every day meaning. CMS unlawfully chose to ignore both of these meanings.

### 1. CMS's Definition Of "Wholesaler" Is Inconsistent With The Definition Used In The FFDCA

CMS's definition of "wholesaler" is inconsistent with the definition and understanding of substantively identical terms adopted by the HHS Secretary for purposes of the FFDCA, which is implemented by the HHS Secretary through the Food and Drug Administration ("FDA"). The FFDCA was amended in 1988 by the Prescription Drug Marketing Act ("PDMA"), Pub. L. No.100-293, to help safeguard the safety and integrity of the prescription drug supply by erecting

controls against the distribution and sale of counterfeit, adulterated, misbranded, sub-potent, and expired prescription drugs. *See generally* S. Rep. No. 100-303, at 2 (1988), reprinted in 1988 U.S.C.C.A.N. at 57. Under the FFDCA, as amended by the PDMA, all persons engaged in the "wholesale distribution" of prescription drugs in interstate commerce must be licensed by a state in accordance with guidelines issued by FDA. 21 U.S.C. § 353(e)(2). Pursuant to this statutory mandate, in 1990 FDA issued "Guidelines for State Licensing of Wholesale Prescription Drug Distributors," codified at 21 C.F.R. Part 205.

Every wholesale distributor of prescription drugs operating in the United States must be licensed by at least one state. *See* 21 C.F.R. § 205.4. Many wholesale drug distributors are licensed as wholesale distributors in multiple states, since many states require distributors shipping product into the state to be licensed by that state, regardless of whether the distributor operates a warehouse or other facility within the state.[1]

In light of this longstanding FDA requirement that equates wholesale prescription drug distributors with those persons holding state wholesale drug distribution licenses, HDMA believes that CMS should have taken into account state licensure as a prescription drug wholesale distributor in determining "wholesaler" status under its AMP final rule.[2] Instead,

---

[1]    *See, e.g.*, 225 Ill. Comp. State. 120/25(a); Ill. Admin. Code tit. 68 § 1510.20; Me. Rev. Stat. Ann. Tit. 32, 13751; Me. Rev. Stat. Ann. Tit. 32, § 13758. In comparison, some states do not impose their own licensing requirements on out-of-state distributors shipping product into the state. *See, e.g.*, Mass. Regs. Code tit. 247, § 7.01; Haw. Rev. Stat. §§ 461-4.5(2) and 461-8.6.

[2]    Under the CMS definition of "wholesaler," *any* retail pharmacy could be a "wholesaler." Under a proper interpretation of the term "wholesaler" and consistent with FDA's definition, a retail pharmacy would be a "wholesaler" only if it holds a state wholesaler license. *See* 21 C.F.R. § 205.3(g) ("*Wholesale distributor* means anyone engaged in wholesale distribution of prescription drugs, including…retail pharmacies that conduct wholesale distributions.").

CMS adopted a far more expansive definition of "wholesaler," which includes many entities that

do not hold state prescription drug wholesale distribution licenses:

> *Wholesaler* means any entity (including those entities in the
> retail pharmacy class of trade) to which the manufacturer sells the
> covered out-patient drugs, but that does not relabel or repackage
> the covered out-patient drug.

42 C.F.R. 447.504(f).[3]

It is a well-recognized principle of statutory construction that Congress is presumed to be

aware of existing definitions in federal law when it passes new legislation.  When determining

Congressional intent, "it is to be assumed that Congress was aware of established rules of law

applicable to the subject matter of the statute and thus, upon enactment, the statute is to be read

in conjunction with the entire existing body of law." *Kansas City, Mo. v. Fed. Pa. Elec. Co.*, 310

F.2d 271, 275 (8th Cir. 1962). *See also Miles v. Apex Marine Corp.*, 498 U.S. 19, 32 (1990)

("We assume that Congress is aware of existing law when it passes legislation.").  Therefore,

CMS should have adopted a regulatory definition for "wholesaler" that is generally consistent

with the longstanding definitions and understandings of similar terms in the FFDCA, rather than

the far more expansive definition it adopted.  CMS's failure to do so is all the more telling

because both CMS and FDA are sister agencies of the Department of Health and Human

---

[3]      HDMA recognizes that some adjustments need to be made to FDA's definitions to make
them usable for AMP purposes.  For example, under FDA's state wholesale prescription drug
distributor licensure requirements, a "wholesale distributor" includes drug manufacturers. *See*
21 C.F.R. § 205.3(g).  Since AMP is defined by statute as "the average price paid to the
manufacturer...by wholesalers," 42 U.S.C. § 1396r-8(k)(1), manufacturers need to be excluded
from the definition of "wholesaler" for purposes of the AMP final rule to avoid the nonsensical
outcome of defining AMP as, in relevant part, the price paid to the manufacturer by a
manufacturer.  These and other nuances in the definition of "wholesaler" under the AMP rule
could have been resolved and, as discussed in Section B below, should have been resolved,
during the rulemaking.  CMS, however, in violation of the Administrative Procedure Act and
otherwise arbitrarily and capriciously, did not adequately address in the final rule or its preamble
the concerns many commenters raised about the proposed rule's overly broad definition of
"wholesaler."

Services, and the HHS Secretary is the individual charged by statute with implementing both the FFDCA and the Social Security Act.

### 2. CMS's Definition Of "Wholesaler" Is Inconsistent With The Plain Meaning Of The Term

Not only is CMS's definition of "wholesaler" at odds with FDA's longstanding definition and understanding, it is inconsistent with the plain meaning of the term "wholesaler." Webster's defines wholesaler as "a merchant middleman who sells chiefly to retailers, other merchants, or industrial, institutional, and commercial users mainly for resale or business use." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 1430 (11th ed. 2007). Similarly, Black's Law Dictionary defines a wholesaler as "[o]ne who buys large quantities of goods and resells them in smaller quantities to retailers or other merchants, who in turn sell to the ultimate consumer." BLACK'S LAW DICTIONARY 1628 (8th ed. 2004). These definitions of "wholesaler" reflect the naturally understood meaning, which is much narrower than what CMS has adopted.

Consistent with these everyday definitions, the prescription drug wholesale distributor is the middleman that typically fits into the supply chain between the manufacturer and the person authorized by law to dispense or administer the prescription drug, such as a retail pharmacy, hospital, or healthcare practitioner. The customary definition of "wholesaler" specifically excludes the retailer, while CMS has opted to include the retailer in its definition.

The Supreme Court of the United States has repeatedly held that, "[w]hen interpreting a statute, we must give words their 'ordinary or natural' meaning." *Leocal v. Ashcroft*, 543 U.S. 1, 9 (2004) (citing *Smith v. United States*, 508 U.S. 223, 229 (1993)). *See also Am. Tobacco Co. v. Patterson*, 456 U.S. 63, 68 (1982). Absent persuasive reasons to the contrary, the words of a statute must be attributed their ordinary meaning. *Banks v. Chicago Grain Trimmers*, 390 U.S. 459, 465 (1968); *Burns v. Alcala*, 420 U.S. 575, 580 (1975). As discussed in section B below,

CMS failed to provide any reason, let alone a persuasive reason, for applying a meaning of the term "wholesaler" that deviates from the ordinary and natural meaning.

### 3. CMS's Definition Of "Wholesaler" Is Invalid

For the reasons discussed, CMS failed to "give effect to the unambiguously expressed intent of Congress" with regard to the term "wholesaler." *Chevron U.S.A. Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 843 (1984). Thus, CMS's definition of "wholesaler" fails under a *Chevron* Step 1 analysis.

Because the statute is not ambiguous, HDMA does not believe it is necessary for this Court to proceed to Step 2 of *Chevron*. Even if this Court decides that a *Chevron* Step 2 analysis is appropriate, CMS's definition of "wholesaler" nevertheless fails, because it is not a reasonable interpretation of the statute, for the reasons discussed. *Chevron*, 467 U.S. at 844.

### B. CMS Did Not Provide A Meaningful Response To Comments Regarding The Definition Of "Wholesaler"

CMS's proposed definition of "wholesaler" was as follows:

> "*Wholesaler*" means any entity (including a pharmacy, chain of pharmacies, or PBM) to which the manufacturer sells, or arranges for the sale of, the covered outpatient drugs, but that does not relabel or repackage the covered outpatient drug.

Proposed 42 C.F.R. § 447.504(f) (71 Fed. Reg. 77,174, 77,196 (Dec. 22, 2006)).

Rulemaking comments submitted by HDMA and others urged CMS to adopt a less expansive regulatory definition of "wholesaler" that, in relevant part, is consistent with FDA's regulatory definition implementing the PDMA. CMS's *entire* preamble discussion of these comments is as follows:

> *Wholesaler*
>
> *Comment*: Several commenters said that CMS should define the term "wholesaler" to mean any entity that purchases

6

drugs from a manufacturer for purposes of resale. This would be consistent with the definition in the national rebate agreement. Another commenter said that "wholesaler" should be defined in a manner that better reflects current law and practice. The commenter proposed wholesaler to mean any entity that is licensed in a State as a wholesaler distributor of pharmaceuticals to which the manufacturer sells, or arranges for the sale of, covered outpatient drugs, but that does not relabel or repackage the covered outpatient drug. Several commenters requested that CMS define the terms wholesaler, wholesale distribution and distributor be consistent with FDA regulation. The FFDCA defines wholesale distributor as any person (other than the manufacturer or the initial importer) who distributes a device or drug from the original place of manufacture to the person who makes the final delivery or sale of the device or drug to the ultimate consumer or user. Under the PDMA regulations, wholesale distributor means any person engaged in the wholesale distribution of prescription drugs, including, but not limited to manufacturers, repackers, own-label distributors, private-label distributors, jobbers, brokers, warehouses, including manufacturers' and distributors' warehouses, chain drug warehouses, and wholesale drug warehouses, independent wholesale drug traders, and retail pharmacies that conduct wholesale distributions. Several commenters support warehousing pharmacy chains, warehousing mass merchant and supermarket pharmacy operations being treated as wholesalers.

  *Response*: We believe that for this final rule to be consistent with current law as well as reflect recommendations made to us by the OIG and relevant comments, it is necessary to revise the definition of wholesaler. We have revised wholesaler at § 447.504(f) to mean any entity (including those entities in the retail pharmacy class of trade) to which the manufacturer sells the covered outpatient drug, but that does not relabel or repackage the covered outpatient drug.

72 Fed. Reg. 39,142, 39,164-65 (July 17, 2007).

A comparison of the proposed and final regulatory definitions of "wholesaler" readily shows that CMS did not make changes that responded to the comments of HDMA and others regarding the desirability of consistency with FDA's definitions. While CMS referred to the

recommendations made to CMS by the Office of Inspector General ("OIG"),[4] there was nothing in OIG's recommendations that was relevant to the comments calling for consistency with the FFDCA. *See* 72 Fed. Reg. at 39,145 (discussing OIG recommendations).

Thus, CMS did not respond in a meaningful way to all of the comments of HDMA and others regarding the definition of wholesaler. This failure to respond in a meaningful way to the comments regarding the definition of "wholesaler" supports the contentions of NACDS and NCPA that CMS acted in an arbitrary and capricious manner. As the D.C. Circuit has recognized and very recently reaffirmed:

> The requirement that agency action not be arbitrary or capricious includes a requirement that the agency ... respond to "relevant" and "significant" public comments.

*City of Portland, OR v. United States EPA*, 2007 WL 3254333 at *6 (D.C.Cir.2007) (quoting *Public Citizen, Inc. v. FAA*, 988 F.2d 186, 197 (D.C.Cir.1993)).[5]

---

[4]     Available at http://www.oig.hhs.gov/oas/reports/region6/60600063.pdf (accessed Nov. 26, 2007).

[5]     CMS's failure to do so is also a violation of the rulemaking provisions of the Administrative Procedure Act ("APA"), 5 U.S.C. § 553. Specifically, section 553(c) of the APA requires that "the agency shall incorporate in the rules adopted a concise general statement of their basis and purpose." As explained by the D.C. Circuit, "its purpose is, at least in part, ***to respond in a reasoned manner to the comments received, to explain how the agency resolved any significant problems raised by the comments***, and to show how that resolution led the agency to its ultimate rule." *Rodway v. United States Department of Agriculture*, 514 F.2d 809, 817 (D.C. Cir. 1975) (citations and footnote omitted; emphasis added). "The opportunity under the APA to comment on proposed rules is 'meaningless unless the agency responds to significant points raised by the public.'" *St. James Hospital v. Heckler*, 760 F.2d 1460, 1470 (7th Cir. 1984) (citation omitted) (involving Social Security Act). The *St. James Hospital* court went on to conclude that the HHS Secretary had failed to comply with section 553(c) of the APA because "the Secretary's basis and purpose statement failed to respond to many significant points made by the public" in opposition to the proposed rule, and "failed to give a reasoned response to other criticisms" of the proposed rule. 760 F.2d at 1470. For precisely the same reasons here, CMS violated section 553(c) of the APA.

## III. **CONCLUSION**

For the reasons stated, CMS did not adopt an appropriate regulatory definition of the term "wholesaler" in its AMP final rule. For that reason, as well as the reasons stated in the memorandum of NACDS and NCPA in support of their motion for preliminary injunction, HDMA urges this Court to grant the motion for a preliminary injunction.


Dated: November 27, 2007.          Respectfully submitted,

By: _____
Arthur Y. Tsien, D.C. Bar No. 411579
OLSSON FRANK WEEDA TERMAN BODE MATZ PC
1400 16th Street, N.W., Suite 400
Washington, D.C. 20036-2220
(202) 789-1212
(202) 234-3550 (facsimile)

Counsel to *Amicus Curiae*
Healthcare Distribution Management Association

Of Counsel:

Richard L. Frank
Susan D. Bastone
OLSSON FRANK WEEDA TERMAN BODE MATZ PC
1400 16th Street, N.W., Suite 400
Washington, D.C. 20036-2220
(202) 789-1212
(202) 234-3550 (facsimile)