IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL ASSOCIATION OF CHAIN DRUG STORES and NATIONAL COMMUNITY PHARMACISTS ASSOCIATION, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, *et al.*, <br><br> Defendants. | Civil Action No. 1:07-cv-02017 (RCL) |

**REPLY IN SUPPORT OF MOTION TO
SUPPLEMENT ADMINISTRATIVE RECORD**

Defendants do not want this Court to consider the Schondelmeyer Report for one reason: It demolishes any defense of the AMP Rule.[1] Dr. Schondelmeyer, who has been retained by the Defendants on numerous occasions to provide expert advice regarding the pharmaceutical industry, demonstrates that the AMP Rule ignores the plain language of the Social Security Act, longstanding industry practice, and common sense. The Schondelmeyer Report provides explanatory material that this Court may find helpful to understand that Defendants exceeded the plain language of the statute. Further, on December 5, 2007, NACDS submitted the Schondelmeyer Report as a formal comment on the AMP Rule. The AMP Rule was issued "with [a] comment period [that] allows for further public comment on the Average Manufacturer

---

[1] NACDS and NCPA use the same abbreviations in this Reply as they used in their opening briefs: Memorandum of the National Association of Chain Drug Stores and National Community Pharmacists Association in Support of Their Motion for Preliminary Injunction and Request for Expedited Hearing and Motion of National Association of Chain Drug Stores and National Community Pharmacists Association to Supplement Administrative Record.

Price and Federal Upper Limits (FUL) outlier section of the rule." 72 Fed. Reg. 39142, 39142 (July 17, 2007) (leaving open the comment period until January 2, 2008).

This Court should grant the Motion of the NACDS and NCPA and admit the Schondelmeyer Report because:

- As reflected above, in response to Defendants' Opposition to Plaintiffs' Motion, the Schondelmeyer Report has been formally added to the administrative record, mooting Defendants' assertion that it is not a part of the agency record to be reviewed;

- Alternatively, under Step One of its *Chevron* analysis, the Court uses ordinary means of statutory construction to determine the plain meaning of a statute. Ordinary means of statutory construction may include the use of expert testimony related to terms of art; and

- The Court may use material outside the administrative record to provide background information and to ascertain or determine whether the Defendants' definition of AMP is rational under Step Two of *Chevron,* and whether the Defendants violated the APA by acting arbitrarily and capriciously or failed to consider "all the relevant factors" in their decision and failed to fully explicate the grounds for their decision.

### I.  The Government Does Not Oppose This Court Considering Those Sections of the Schondelmeyer Report That Demonstrate Irreparable Harm.

The Government concedes that this Court may consider the Schondelmeyer Report with regard to issues of irreparable harm. The Schondelmeyer Report addresses the irreparable harm that will result in the posting of AMP calculations on the internet for consumers and third party payers because "the broad and detached definition of the 'retail pharmacy class of trade' in the Final Rule muddles the actual data from various distinct groups (actual classes of trade) of purchasers in a manner that renders the actual data nearly useless in reflecting the structure and pricing patterns that are functional in the pharmaceutical market." Schondelmeyer Report at ¶ 209.

In addition, the Government concedes that this Court may use the Schondelmeyer Report for purposes of evaluating the irreparable harm that will occur to pharmacies if reimbursement

rates are capped as contemplated in the AMP Rule. *See* Schondelmeyer Report at ¶¶ 211-234.

Dr. Schondelmeyer states that because retail pharmacies, in many cases, will not be able to purchase drugs for less than the Federal Upper Limit set by the AMP Rule, "the retail pharmacy market may see a loss of 10,000 to 12,000 pharmacies (the vast majority of which would be pharmacies in rural or inner city urban areas) over the next few years." Schondelmeyer Report at ¶ 226. In addition to those sections of the Schondelmeyer Report, this Court should consider the Schondelmeyer Report in its entirety for the reasons stated below.

**II.     The Schondelmeyer Report is Now Part of the Administrative Record.**

Defendants sought additional comments from stakeholders after they promulgated the AMP Rule. Therefore, Defendants left open the comment period until January 2, 2008. In response to Defendants' Opposition to Plaintiffs' Motion, NACDS submitted the Schondelmeyer Report as part of the formal comments on the AMP Rule on December 5, 2007. Therefore, any argument Defendants have made based on the fact that the Schondelmeyer Report is not part of the administrative record has been mooted.

**III.    Reliance On Expert Assistance Regarding Statutory Terms and Industry Terms of Art Is A Sound "General Rule Of Construction."**

The Schondelmeyer Report demonstrates that the AMP Rule is arbitrary and capricious by showing that the AMP Rule's definitions of "wholesaler" and "retailer pharmacy class of trade" lack any rational basis because they ignore the plain language of federal and State statutes, common usage, and industry understanding. In addition to this APA analysis and contrary to Defendants' assertions, NACDS and NCPA also proffer the Schondelmeyer Report to assist this Court in its *Chevron* Step One analysis. *See Chevron U.S.A. Inc. v. NRDC*, 467 U.S. 837 (1984).

Under *Chevron*, a court must first determine whether "Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for

3

the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron U.S.A. Inc. v. NRDC*, 467 U.S. 837, 842-43 (1984). Under *Chevron* Step One, the composition of the administrative record is irrelevant because the agency is not afforded any deference related to its decision-making. *See Strickland v. Comm'r, Me. Dep't of Human Servs.*, 48 F.3d 12, 17 -18 (1st Cir. 1995). If Congress has spoken clearly on the issue as determined by using ordinary means of statutory construction, then the agency would not be entitled to deference regardless of what appears in the administrative record. *See Am. Bankers Ass'n v. NCUA*, 271 F.3d 262, 266-67 (D.C. Cir. 2001) (internal citations and quotations omitted) ("Although the administrative record for the regulation is not before this Court, that is of no moment. Our review is limited to interpreting the extent to which the regulation is consistent with the statute-a task which we are competent to perform without the administrative record."). In other words, the Chevron Step One analysis is not limited to the administrative record.

In conducting the statutory analysis required by *Chevron*, reliance on expert definitions of statutory terms and terms of art is a sound "general rule of construction." *Massachusetts v. Blackstone Valley Elec. Co.*, 67 F.3d 981, 986 (1st Cir. 1995); *see also, Corning Glass Works v. Brennan,* 417 U.S. 188, 201 (1974) ("[W]here Congress has used technical words or terms of art, 'it [is] proper to explain them by reference to the art or science to which they [are] appropriate.'")

The Schondelmeyer Report provides an expert explanation of the industry application of the statutory terms "wholesaler," "retail pharmacy class of trade," and "manufacturer," as contemplated by *Massachusetts v. Blackstone*. For example, Dr. Schondelmeyer provides a summary of federal and state statutes and regulations defining "wholesaler," the plain meaning

4

and common usage of the term "wholesaler," and the use of the term "wholesaler" in the pharmaceutical market context.  *See* Schondelmeyer Report at ¶¶ 82-94.  Similarly, the Schondelmeyer Report describes the common understanding and industry application of the statutory term "retail pharmacy class of trade."  *See* Schondelmeyer Report at ¶¶ 96-118.

The Schondelmeyer Report also describes why various transactions that the AMP Rule includes in the calculation of AMP do not conform to the common understanding and industry usage of the terms "retail pharmacy class of trade" and "wholesaler."  *See* Schondelmeyer Report at ¶¶ 129-196.  For example, Dr. Schondelmeyer explains how no one, except for Defendants, considers a patient to fall within the definition of "wholesaler" or "retail pharmacy class of trade."  *See id.* at ¶¶ 155-158.  Dr. Schondelmeyer also explains why no one would consider a physician to be either a wholesaler or in the retail pharmacy class of trade.  *See id.* at ¶¶ 175-178.  Dr. Schondelmeyer provides a similar analysis for several other categories of transactions that the Defendants improperly include in the calculation of AMP.  *See id.* at ¶¶ 129-196.

None of the cases relied upon by the Defendants in opposition to use of the Schondelmeyer Report considers the use of expert reports by a court conducting Step One of a *Chevron* analysis.  *See Florida Power & Light Co. v. Lorion*, 470 U.S. 729 (1985) (nothing in case describing proper use of expert report in *Chevron* analysis); *Texas Rural Legal Aid, Inc. v. Legal Servs. Corp.*, 940 F.2d 685, 698 (D.C. Cir. 1991) (discussing whether to allow discovery to determine whether an agency's action was arbitrary and capricious); *Amfac Resorts, LLC v. United States DOI*, 143 F. Supp. 2d 7, 9 (D.D.C. 2001) (APA case not involving *Chevron*

analysis at all).² Since Defendants have not provided any support for their argument that this Court should not consider Dr. Schondelmeyer's Report in its *Chevron* Step One analysis, this Court should use the Report as an ordinary means of statutory construction.

## IV. This Court May Use the Schondelmeyer Report in Step Two of its Chevron Analysis And to Determine Whether the Agency Met the Requirements of the APA.

If this Court finds that the Congressional definition of AMP is not plain, then it turns to Step Two of *Chevron*. *Chevron*, 467 U.S. at 842-43. Under Step Two of *Chevron*, the Court determines whether the agency's interpretation is "a permissible construction of the statute." *Id*. In order to be permissible, the agency's interpretation must be rational. *See Strickland*, 48 F.3d at 17-18. The Schondelmeyer Report demonstrates that the Defendants' definitions of "manufacturer," "wholesaler" and "retail pharmacy class of trade" lack any rational basis. Dr Schondelmeyer shows that not a single State or federal statute, common usage, or industry practice supports Defendants' position.

The Schondelmeyer Report also demonstrates that Defendants acted arbitrarily and capriciously in violation of the APA. The Schondelmeyer Report provides this Court with an appropriate "clarification of technical terms or subject matter involved in the agency action under review." *Public Power Council v. Johnson*, 674 F.2d 791, 794 (1982). The Schondelmeyer Report demonstrates that Defendants could not have seriously considered common usage or trade usage when they promulgated the AMP Rule.

Moreover, the Schondelmeyer Report will assist this Court in ascertaining whether the agency "considered all the relevant factors or fully explicated its course of conduct and grounds

---

² In fact, it appears in the *Amfac Resorts, LLC* case that this Court may have considered an expert opinion in determining whether the agency's actions violated the APA. The issue in the *Amfac* case was the material to which the Plaintiff's expert would be entitled. *Id*. 9-10.

for its decision." *Tafas v. Dudas*, 511 F. Supp. 2d 652, 662-63 (E.D. Va. 2007) (internal citations omitted). Like the declaration in the *Tafas* decision, the Schondelmeyer Report relies on "statutes, court cases, Congressional documents and the [agency's] own publications, not on rare sources or information that the [agency] was unaware of. In fact, this Court [should] find it extremely unusual if the [agency] had not taken in consideration statutes, . . . case law, and declarations of Congress in the promulgation of the [f]inal [r]ule[] . . ." *Id.* at 662 There is nothing improper in receiving declarations that "merely illuminate reasons obscured but implicit in the Administrative Record." *Clifford v. Pena*, 77 F.3d 1414, 1418 (D.C. Cir. 1996) (allowing declaration of agency expert to provide Court with background material).

Further, the information in the Schondelmeyer Report was readily available to Defendants in the administrative record as corroborated in the *amicus curiae* brief filed by the Healthcare Distribution Management Association ("HDMA"), the trade association representing wholesalers, in which HDMA points out that the Defendants received extensive comments related to the industry definition of wholesaler; comments that Defendants disregarded. *See* Memorandum of *amicus curiae* Healthcare Distribution Management Association in support of Plaintiff's Motion for Preliminary Injunction, pages 6-7.[3] In like manner, Defendants had the same access to federal and State statutes, as well as dictionaries, as Dr. Schondelmeyer. Finally, Dr. Schondelmeyer's description of the pharmaceutical industry should come as no surprise to Defendants. From 1989 through November 2006, Defendants retained Dr. Schondelmeyer at least six times to provide written analyses of drug pricing in the Medicare and Medicaid context.[4]

---

[3] Defendants did not object to HDMA's motion to file its *amicus curiae* brief. This Court granted HDMA's motion to file its *amicus curiae* brief on December 5, 2007. HDMA did so the next day.

[4] See Section V below for a list of those reports.

If the agency did not consider the issues raised in the Schondelmeyer Report and the materials appended to it, many of which include reports either requested by CMS or ordered by Congress, then Defendants failed to consider all relevant information and the Court should consider the Schondelmeyer Report for that reason.  *See Amfac Resorts, LLC*, 143 F. Supp. 2d at 11-12.

Further, Defendants added several types of improper transactions to the AMP Rule without comments, such as sales to dialysis centers, surgical centers, ambulatory care centers, clinics, mental health centers, home infusion providers, specialty pharmacies, home health care providers, and physicians.  *See* AMP Rule ¶ 447.50(g)(6), (10), (11), (12), and (13).  Other important items were not even addressed in the AMP Rule itself, but were only addressed in the preamble (*e.g.*, the AMP website, the inclusion of sales related to manufacturer-patient assistance programs in certain circumstances, and the application of Federal Upper Limits to B-rated drugs).  This failure of Defendants to properly consider factors related to the definition of AMP provides an independent basis for supplementing the record.  *See Amfac Resorts, LLC*, 143 F. Supp. 2d at 11 n. 5 (noting that the court can go beyond the administrative record, among other reasons, if the agency failed to consider all relevant factors) (*citing Esch v.* Yeutter, 876 F.2d 976, 991-92 (D.C. Cir. 1989)); *Power Counsel v. Johnson*, 674 F.2d 791, 793-94 (9th Cir. 1982).  Defendants cannot add new provisions to a final rule, and then benefit from an inadequate administrative record in these situations.  *See Public Power*, 674 F.2d at 793-94 (internal quotations and citations omitted).

**V.      Dr. Schondelmeyer is Clearly Qualified to Provide this Court with the Expert Analysis Contained in His Report.**

In their response to the motion to supplement, Defendants suggest that they may not acquiesce that Dr. Schondelmeyer is qualified to provide the material contained in the

8

Schondelmeyer Report.  NACDS and NCPA find this a surprising position for Defendants to take considering that they have repeatedly retained Dr. Schondelmeyer over the years to provide exactly this type of expert analysis.  Among the studies Dr. Schondelmeyer has conducted for CMS (formerly The Health Care Financing Administration) are the following:

a.  *Report to Congress on Manufacturers' Prices and Pharmacists' Charges for Outpatient Drugs Covered by Medicare* (U.S. Department of Health and Human Services, June 27, 1989, Stephen W. Schondelmeyer and Joseph Thomas);

b.  *Impact of the Medicaid Drug Rebate Program on Expenditures, Utilization, and Access:  Final Report* (U.S. Health Care Financing Administration, Contract # 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, DO #3, April 1995, Stephen W. Schondelmeyer, Judy A. Johnson, Dong Churl Suh, George Wright, Ann Cherlow, Andrew Asher, Angela Schmitt, Portia DeFilippes, Jon B. Christianson, John Kralewski);

c.  *Medicaid and Medicare Drug Pricing:  Strategy to Determine Market Prices* (CMS Contract #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, Task Order 1, August 30, 2004, Stephen W. Schondelmeyer and Marian V. Wrobel);

d.  *Sales of Drugs and Biologicals to Large Volume Purchasers:  Final Report* (CMS Contract #500-00-49, Task Order 1, September 19, 2005, Marian V. Wrobel, Stephen W. Schondelmeyer, Susan Jureidini, Shuchita Agarwal, Rachel Sayko, A.C. Doyle);

e.  *Case Study of the Texas Vendor Drug Program's Approach to Estimating Drug Acquisition Cost:  Final Report* (CMS Contract #500-00-049, Task Order 1, September 26, 2005; Marian V. Wrobel, Stephen W. Schondelmeyer, Shuchita Agarwal, and Janice Cooper); and

f.  *Evaluation of Pharmaceutical Pricing Under Medicare Drug Card:  Final Report* (U.S. Dept. of Health & Human Services, Assistant Secretary for Planning and Evaluation, Task Order Contract #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, November 16, 2006, Stephen W. Schondelmeyer, Margaret Artz, Shriram Parashuram, Lois Olinger, and Sarah Shoemaker).

In short, Dr. Schondelmeyer is qualified to provide the analysis contained in his Report.

## **CONCLUSION**

This Court should grant the motion of NACDS and NCPA to supplement the administrative record because:

- Plaintiffs added the Schondelmeyer Report to the administrative record;

- This Court may use an expert opinion in conducting the ordinary statutory construction analysis required by *Chevron* Step One;

- Under *Chevron* Step Two and in analyzing whether the Defendants acted arbitrarily and capriciously under the APA, this Court may use an expert report such as Dr. Schondelmeyer's for background and to assure that the Defendants considered all relevant matters in full; and

- Dr. Schondelmeyer is qualified to provide this expert opinion.

Respectfully submitted,

/s/ Don L. Bell, II
Don L. Bell, II
General Counsel
D.C. Bar No. 443149
Mary Ellen Kleiman
Associate General Counsel
DC Bar No. 458400
National Association of Chain Drug Stores
413 North Lee Street
Alexandria, VA 22313-1480
P: 703-549-3001
F: 703-684-6747
Email: DBell@nacds.org

/s/ Christopher W. Mahoney
Christopher W. Mahoney
D.C. Bar No. 394416
Duane Morris LLP
1667 K Street, N.W.
Suite 700
Washington, DC 20006-1608
(202) 776-7867 (telephone)
(202) 776-7801 (fax)
Email: CMahoney@duanemorris.com

/s/ John M. Rector
John M. Rector
General Counsel
National Community Pharmacists Association
100 Daingerfield Road
Alexandria, VA 22314-2885
P: 703-683-8200
F: 703-683-3619
Email: john.rector@ncpanet.org

/s/ Frederick R. Ball
Nicholas J. Lynn
Frederick R. Ball
Duane Morris LLP
227 West Monroe Street
Suite 3400
Chicago, Illinois 60606
(312) 499-6700 (telephone)
(312) 499-6701 (fax)
Email: NJLynn@duanemorris.com
Email: FRBall@duanemorris.com

Attorneys for National Association Of Chain Drug Stores And National Community Pharmacists Association

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 6th day of December, 2007, true copies of the foregoing Reply In Support Of Motion To Supplement Administrative Record were served via e-mail and via ECF service on the following:

Wendy M. Ertmer
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue NW
Washington, DC 20530

                                                      /s/ Christopher W. Mahoney
                                                      Christopher W. Mahoney

DM1\1247622.1